UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


EARL L. MASTERS,                    :    **CIVIL NO. 1:08-CV-1872**
                                    :
            Plaintiff              :    (Judge Conner)
                                    :
      v.                            :    (Magistrate Judge Smyser)
                                    :
NORFOLK SOUTHERN RAILWAY            :
COMPANY, INC.,                      :
                                    :
            Defendant/             :
            Third-Party            :
            Plaintiff             :
                                    :
      v.                            :
                                    :
JACOBSON COMPANIES, INC., a/k/a :
JACOBSON TRANSPORTATION             :
COMPANY, INC., d/b/a ARNOLD         :
LOGISTICS,                          :
                                    :
            Third-Party            :
            Defendant              :


**REPORT AND RECOMMENDATION**


**Background**.

       This is a civil action brought under the Federal

Employers' Liability Act, 45 U.S.C.S. § 51, et seq.  The Act

makes a railroad company liable to its employees for injuries

resulting from the negligence of the railroad company.  The

plaintiff is Earl L. Masters.  The defendant is Norfolk

Southern Railway Company, Inc. ("Norfolk Southern").  The

third-party defendant (and counterclaim and cross-claim

plaintiff) is Jacobson Companies, Inc. a/k/a Jacobson

Transportation Company, Inc. d/b/a Arnold Logistics ("Arnold

Logistics").

The complaint (Doc. 1), filed on October 10, 2008,

alleges that plaintiff Earl Masters, a Norfolk Southern

employee, on February 23, 2008 on the property of Arnold

Logistics, while working for Norfolk Southern, suffered severe

and permanent personal injury as the result of the negligence

of defendant Norfolk Southern.  His claim is that he was

injured as the result of the failure of the defendant to

provide the plaintiff with a safe place to work, failure to

warn him of possible hazards to his health, failure to keep its

equipment and property in a proper and safe manner, failure to

properly provide for his safety and failure to employ safe

procedures in the movement of railroad cars.  While not stated

in his complaint, it is the theory of his case that, in

particular, the defendant failed to provide a safe walking

surface resulting in his falling as the result of stepping on something.

The court has jurisdiction under 28 U.S.C. § 1331.

An answer (Doc. 4) to the complaint was filed on November 12, 2008.

A third-party complaint (Doc. 12) was filed by Norfolk Southern on January 16, 2009 against Arnold Logistics. The third-party complaint alleges that third-party defendant Arnold Logistics is contractually responsible for the maintenance of the track area where the plaintiff was allegedly injured and that Arnold Logistics has contractually agreed to indemnify Norfolk Southern as to claims such as that of the plaintiff. An amended third-party complaint (Doc. 22) was filed on March 20, 2009.

An amended complaint (Doc. 24) was filed on March 24, 2009, in which the plaintiff states claims against both Norfolk Southern and Arnold Logistics. An answer (Doc. 25) to

plaintiff's amended complaint was filed by Norfolk Southern on March 25, 2009.  An answer (Doc. 33) of Arnold Logistics to the amended third-party complaint and counterclaim against Norfolk Southern was filed on May 19, 2009.  An answer (Doc. 34) of Norfolk Southern to Arnold Logistics' counterclaim was filed by Norfolk Southern on May 27, 2009.  An answer by Arnold Logistics to plaintiff's amended complaint and a cross-claim against Norfolk Southern (Doc. 39) was filed on July 13, 2009.  Norfolk Southern filed an answer (Doc. 40) to Arnold Logistics' cross-claim on July 29, 2009.

On August 2, 2010, defendant Arnold Logistics filed a motion (Doc. 55) for summary judgment and a brief (Doc. 56) in support.  Defendant Norfolk Southern filed a motion (Doc. 57) for summary judgment on August 2, 2010, a LR 56.1 statement (Doc. 58) and a brief (Doc. 59) and exhibits in support. Defendants Arnold Logistics and Norfolk Southern each filed a brief (Docs. 61, 63) in opposition to the other defendant's motion for summary judgment as to cross-claims and counterclaims on August 13, 2010.  The plaintiff on August 16, 2010 filed a brief (Doc. 64) and a LR 56.1 statement (Doc. 65)

4

in opposition to the Norfolk Southern motion for summary

judgment and a brief (Doc. 67) and a LR 56.1 statement (Doc.

66) in opposition to Arnold Logistics' motion for summary

judgment.  Defendant Arnold Logistics filed a LR 56.1 statement

(Doc. 70) on August 30, 2010.  A reply brief (Doc. 71) in

support of defendant Norfolk Southern's motion for summary

judgment was filed on August 30, 2010, and a reply brief (Doc.

80) was filed by defendant Arnold Logistics on September 7,

2010.  On September 7, 2010, defendant Norfolk Southern filed a

LR 56.1 statement (Doc. 79) in response to the plaintiff's

statement (Doc. 65) of additional material facts filed on

August 16, 2010.


     On August 30, 2010, defendant Norfolk Southern filed a

motion (Docs. 73) seeking an order disqualifying the

plaintiff's counsel or striking the affidavit of Richard J.

Groff, and a supporting brief (Docs. 74).  On that date,

defendant Norfolk Southern also filed a motion (Doc. 75) for an

order striking the affidavits of the plaintiff and of Raymond

A. Duffany, and a supporting brief (Doc. 76).  Additionally on

August 30, 2010, defendant Arnold Logistics, filed a motion to

strike the affidavits of the plaintiff, Richard Groff and Raymond Duffany (Doc. 77) as well as a supporting brief (Doc. 78). On September 13, 2010, the plaintiff filed a brief in opposition (Doc. 81) to defendant Arnold Logistics' motion to strike the affidavits, a brief in opposition (Doc. 82) to defendant Norfolk Southern's motion to strike the affidavits of the plaintiff and Raymond A. Duffany and a brief in opposition (Doc. 83) to Norfolk Southern's motion to disqualify plaintiff's counsel or to strike the affidavit of Richard Groff. Reply briefs (Docs. 84, 85 and 86) in support of these three motions were filed on September 27, 2010.

This Report and Recommendation addresses the five outstanding motions.

**The Motions to Strike**.[1]

Defendant Norfolk Southern has filed a motion (Doc. 75) to strike the affidavits of the plaintiff and of Raymond A. Duffany. Defendant Norfolk Southern has also filed a motion (Doc. 74) to strike the affidavit and the testimony of Richard J. Groff. Defendant Arnold Logistics has filed a motion (Doc. 77) to strike the affidavits of Earl Masters, Richard Groff and Raymond Duffany.

The plaintiff in his deposition had stated that he had fallen when he had stepped on a piece of gravel. The affidavit of the plaintiff, filed with other documents in opposition to defendant Norfolk Southern's motion for summary judgment, contains his statement that "gravel" means "a large stony substance of irregular size and consistency, not normally found in any type of railroad walkway." (Doc. 75, Exhibit C at ¶ 6).

---

1. Although the motions to strike are 28 U.S.C. § 636(b)(1)(A), not (b)(1)(B), matters, we address them in this context in this Report and Recommendation because they are procedurally and substantively not appropriately separated from the summary judgment analysis.

There is evidence that the surface where the plaintiff fell was comprised of ballast. By his references in the affidavit to "ballast" (Doc. 75, Exhibit C at ¶ 7 and ¶ 11), and by the reference to "gravel" as "large" stone the affidavit implies that a unit of gravel is larger than and less regular in shape than a unit of ballast. In paragraph nine of his affidavit, he states that the "something" on which he stepped was "clearly not ballast" and was "gravel" and was "a piece or chunk of irregular form". (Doc. 75, Exhibit C at ¶ 9).

In both his deposition testimony and his affidavit, the plaintiff acknowledges that he did not, before or after stepping on the "something", see what he was stepping on or had stepped on. (Doc. 75, Exhibit A at pp. 148 and 149).

In the deposition testimony of plaintiff Masters on November 12, 2009, he stated that he had stepped on "gravel". (Doc. 75, Exhibit A at p. 148). He also said that the "something" that he had stepped on, "had to be something big". *Id.* He was not asked in his deposition to provide a

definition of "ballast" as he understands that word.  He was
not asked to provide approximate measurements.

The defendants argue that the affidavit of the
plaintiff should not be considered as a part of the summary
judgment record.  They argue that it is a sham affidavit within
the meaning of that term as described in *Jiminez v. All
American Rathskeller, Inc.,* 503 F.3d 247, 251 (3d Cir. 2007).
"A sham affidavit is a contradictory affidavit that indicates
only that the affiant cannot maintain a consistent story or is
willing to offer a statement solely for the purpose of
defeating summary judgment."  *Id.* at 253.

The plaintiff's use of the word "gravel" and of the
word "ballast" is at the least confusing.  It appears that the
plaintiff, who does not know what he stepped on, is becoming
more descriptive as to what it was that he stepped on.  He also
appears to use the words "gravel" and "ballast" in a confusing
and possibly erroneous manner.  But his confusing and possibly
erroneous use of words does not necessarily mean that he could
not maintain a consistent story once his terminology is clearly

defined and his word usages are understood.  Accordingly, the
plaintiff's affidavit is not a sham affidavit and the
consideration of the pending summary judgment motions should
not exclude his affidavit.

        The defendants argue that the affidavit opinion of
Raymond A. Duffany that the plaintiff stepped on "a large chunk
of mortar which had been spilled onto the track and walkway
area by a contractor that Arnold Logistics had hired to make
concrete repairs many months prior to this incident" and that
"the hazards which existed and caused the injuries sustained by
the Plaintiff were in existence for many months and should have
been detected by a proper inspection and remedied prior to this
incident" should be stricken.  The defendants assert that these
conclusions do not meet the standard of reliability required of
expert testimony, citing *Daubert v. Merrell Dow Pharm. Inc.,*
509 U.S. 579, 592 (1993), that the conclusions are not
connected to data, that the conclusions are pure speculation
and that they are not supported by testing and are not a proper
subject of expert opinion.

Assuming *arguendo* the presence of large chunks of mortar at the time when and in the vicinity where the plaintiff stepped on something, the opinion of Mr. Duffany that the plaintiff stepped on one such large chunk provides no evidence to advance the strength or reliability of the inference that the plaintiff stepped on one such large chunk. Mr. Duffany has no personal knowledge of what the plaintiff stepped on and his opinion as to what the plaintiff had stepped on is not based upon any specialized knowledge or expertise. Neither Rule 701 nor Rule 702 of the Federal Rules of Evidence would justify opinion evidence from him as to the material issue of fact of what had caused the plaintiff to fall. Mr. Duffany's opinion would not be admitted at trial for that reason, and it should therefore not be considered for purposes of the summary judgment motions.

Accordingly, it will be recommended that the Duffany affidavit be stricken and not considered for purposes of the summary judgment motions. The affidavit will not be considered in the following analysis of the motions.

The summary judgment affidavit of Richard J. Groff (Doc. 73, Exhibit A), a Norfolk Southern employee (train engineer), states that Groff was working with plaintiff Masters on February 23, 2008. Groff did not witness the plaintiff's fall, but he did receive a call from the plaintiff just after the fall. He went to the location of the fall. Plaintiff Masters was lying on the ground. Masters told Groff that he (Masters) had fallen and pointed out to Groff where he had tripped. Groff saw concrete and stone, with pieces ranging in size from small to large chunks, in the area pointed to by Masters. The surface in the area observed by Groff was, as stated by Groff, "definitely not ballast or normal railway walking conditions." Groff also states in his affidavit that on March 16, 2010 he met with attorney Emil DiNardo in Harrisburg. He was shown, by DiNardo, photographs of the walking surface at a location said by DiNardo to be inside Arnold Logistics Building 3. Groff states in his affidavit that the photographs depict "a fair and accurate representation of the conditions that existed at the site where Conductor Masters indicated he had tripped and fell."

The defendants ask the court to order that plaintiff's counsel be disqualified or, alternatively, that the affidavit of Richard Groff be stricken.

Rule 4.2 of the Pennsylvania Rules of Professional Conduct states:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

The defendants assert that the plaintiff's attorneys, in violation of Rule 4.2, which has been adopted by this court, LR 83.23.2, communicated with Groff who is within the meaning of Rule 4.2 "a person the lawyer knows to be represented by another lawyer in the matter", in that Groff is a constituent of Norfolk Southern whose "act or omission may be imputed to [Norfolk Southern] for purposes of civil or criminal activity."[2]

---

2. *See* Rule 4.2, Comment 7, which states: "In the case of a represented organization, this Rule prohibits communications with
(continued...)

13

However, this case does not involve an "act or omission" of Groff that is potentially imputable to Norfolk Southern for purposes of civil liability. Groff did not act or fail to act in any way that is material to the merits of the plaintiff's claim. Groff is merely a putative witness. Rule 4.2 in inapposite.

For the foregoing reasons, it will be recommended that the defendants' motions (Docs. 73, 75 and 77) to strike summary judgment materials of the plaintiff and to disqualify counsel be denied in part and granted in part. It will be recommended that the motion (Doc. 75) to strike the Masters' affidavit and the Duffany affidavit be granted in part and that the Duffany affidavit be stricken. It will be recommended that the motions to strike be otherwise denied.

---

2. (...continued)
a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability."

**<u>Summary Judgment Standard</u>**.

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'–– that is, pointing out to the district court –– that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must "set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2).

A material factual dispute is a dispute as to a factual issue the determination of which will affect the outcome of the trial under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

Summary judgment is not appropriate when there is a genuine dispute about a material fact. *Id.* at 248. A dispute as to an issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson, supra,* 477 U.S. at 249-50. In determining whether a genuine issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving

16

party.  *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial. *Anderson, supra,* 477 U.S. at 249.  The proper inquiry of the court in connection with a motion for summary judgment "is the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra*, 477 U.S. at 322.  "Under such circumstances, 'there can be no genuine issue as to any

material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S. at 323).

Local Rule 56.1, Rules of Court, M.D. Pa., provides:

A motion for summary judgment filed pursuant to Fed.R.Civ.P. 56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried. The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried. Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements. All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

**The Undisputed and Disputed Facts**[3].

The plaintiff alleges that he fell and suffered injuries on February 23, 2008.  On the day of the incident, the plaintiff was working as a conductor for Norfolk Southern.  On the day of the incident, the plaintiff was working in Shiremanstown, Pennsylvania at a warehouse owned by Arnold Logistics.

Arnold No. 3 is a facility to which Norfolk Southern delivers railcars containing beer.  There are two train tracks which are parallel to each other and which travel and end inside of Arnold No. 3.  These tracks are referred to as "Old 3" and "New 3".  These tracks and the property they are located upon are owned by Arnold, were constructed by Arnold and are maintained by Arnold.

At the time of the incident, the plaintiff was walking in the area between the tracks "Old 3" and "New 3".  At the

---

3.  These are taken from Docs. 58 and 65.  The undisputed facts are set forth without reference to the documents' numbered paragraphs.

time of the incident, the plaintiff did not see any broken pallets, beer bottles, or beer cans in the area in which he was walking between the tracks "Old 3" and "New 3".  At the time of the incident, the plaintiff did not see any snow, oil, or other slippery substances in the area in which he was walking between the "Old 3" and "New 3" tracks.  In a signed personal injury report completed the day of the accident, Masters stated that he "stepped on piece of gravel".  *See* Docs. 58, 65.

The plaintiff in his summary judgment position argues that there is evidence that the surface where he fell was comprised of a mixture of loose ballast, chunks of mortar mixed in with loose ballast, and chunks of concrete mixed in with loose ballast.  He argues that the evidence is sufficient to support inferences of a dangerously uneven and irregular walking surface.  Doc. 65, No. 8.  He disputes that he was able to see the ground that he was walking on.  Docs. 58, 65, No. 10.  He disputes that he did not see litter or debris where he was walking.  Doc. 58, No. 12.  He disputes that he could not identify any item that had caused him to lose his footing or had created his fall.  *Id.*, at No. 16.

The plaintiff disputes that he had said on February 25, 2008, two days after the accident, that he did not know or recall what he had stepped on at the time of his alleged fall. *Id.*, No. 17. His basis for the assertion of a dispute is that he had in fact on that date known and had recalled and had stated that he had "tripped and fell on something." Doc. 65, No. 17.

The plaintiff disputes that he had said at his deposition that he did not see what he stepped on prior to falling. Doc. 58, No. 18. He advances in support of his assertion of a genuine dispute that he had said that "it had to be something big to get my ankle to roll like that." Doc. 65, No. 18.

The plaintiff disputes that his supervisor, Tom Pruiett, when he inspected the area of the plaintiff's fall immediately after the incident, took no exceptions to the area as to its safety as a footing surface, found no tripping hazards and found the surface to be better than most walking surfaces. Doc. 58, No. 19. The basis for this dispute is that

Mr. Pruiett also found changing surface compositions, including macadam, a stone macadam, a stone concrete and a loose walkway ballast, from the area outside the doorway to the area at the back of the building.  Doc. 65, No. 19.  The plaintiff also cites the finding stated by Mr. Groff that in the area where the plaintiff fell, immediately after the fall, the surface "consisted of concrete and stone, with pieces ranging in size from small to large chunks."  *Id.*  The plaintiff disputes that Mr. Pruiett immediately after taking the plaintiff to the hospital returned to the area where the plaintiff had fallen and found it to be "level and not of a rough or uneven type of surface."  Doc. 58, No. 20.  The plaintiff cites Mr. Pruiett's above-stated reference to a changing surface composition in the area and cites Mr. Groff's above-stated finding.

The plaintiff disputes that Norfolk Southern's assistant division superintendent, Don Craine, immediately after the accident found the walking conditions in the area where the plaintiff had fallen to be good, level, smooth and having no obstruction or debris.  *Id.*, No. 21.  The plaintiff cites Mr. Groff's findings.  Doc. 65, No. 21.

The plaintiff disputes that Frank Suhrie, Norfolk Southern's road foreman for the Harrisburg division, on the day after the accident inspected the area where the plaintiff had fallen and did not find any debris or holes.  Doc. 58, No. 22. The plaintiff cites the finding of Mr. Groff.  Doc. 65, No. 22.

The plaintiff also states additional facts in paragraphs numbered 23-39 of his LR 56.1 statement.  (Doc. 65).

**The Federal Employers' Liability Act**.

The Federal Employers' Liability Act (FELA), 45 U.S.C. § 51, provides:

> Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in

> part from the negligence of any of the
> officers, agents, or employees of such carrier,
> or by reason of any defect or insufficiency,
> due to its negligence, in its cars, engines,
> appliances, machinery, track, roadbed, works,
> boats, wharves, or other equipment.

The Third Circuit Court of Appeals has stated that the summary judgment standard in an FELA case is influenced by the fact that the FELA "has a more lenient standard for determining negligence and causation." *Hines v. Consolidated Rail Corporation,* 926 F.2d 262, 267 (3d Cir. 1991). The Court there stated that in a FELA case, while reasonable foreseeability of harm is an essential ingredient, the trial court should be extremely reluctant to grant summary judgment to a defendant even when there is not evidence supporting a clear or specific theory of causation.

> The results of *Rogers, Gallick*, and subsequent
> decisions, then, have led to the conclusion
> that the Supreme Court has applied a broad
> interpretation of causation under FELA.
>
> Similarly, in *Pehowic v. Erie Lackawanna R.R.*,
> 430 F.2d 697 (3d Cir.1970), we stated that a
> FELA plaintiff need only present a minimum
> amount of evidence in order to defeat a summary
> judgment motion.  [A] trial court is justified
> in withdrawing . . . issue[s] from the jury's

consideration only in those extremely rare
instances where there is a zero probability
either of employer negligence or that any such
negligence contributed to the injury of an
employee." *Id.* at 699-700. *See also Eckert v.
Aliquippa & Southern R.R.,* 828 F.2d 183, 187
(3d Cir.1987) (holding that, under *Pehowic's*
"zero probability" test, the district court
judgment should be reversed and remanded so
that the Jones Act plaintiff could introduce
evidence); *Gans v. Mundy,* 762 F.2d 338, 343-44
(3d Cir.1985) (citing *Pehowic* test for
determining liability under FELA); *Southard v.
Independent Towing Co.,* 453 F.2d 1115, 1118 (3d
Cir.1971) (citing *Pehowic* test for determining
liability in a Jones Act case). Notably, in
Conrail's reference to our perspective on
excluding evidence under FELA, Conrail refers
only to Third Circuit cases that preceded the
*Pehowic* "zero probability" test . . . .

The concept of causation under FELA is also
broadly interpreted. For example, the injury
need not be an immediate result of an accident.
*See, e.g., Urie v. Thompson*, 337 U.S. 163, 187,
69 S.Ct. 1018, 1033, 93 L.Ed. 1282 (1949)
(allowing silicosis, caused by the inhalation
of silica dust over a period of thirty years,
to be compensable under FELA).

*Hines,* at 268-269. The present case is one where there is not

a clear or specific theory of causation. That is so because

the plaintiff does not know what he stepped on or what caused

him to fall. Nor is there a clear or specific theory of a

reasonably foreseeable harm, for the same reason.

25

**Discussion**.

The defendants argue that they are entitled to summary judgment in their favor on the grounds that there is not evidence of a dangerous condition, there is not evidence of notice to either defendant of the existence of a dangerous condition, and there is not evidence that any particular condition in the land caused the accident.

The condition that the plaintiff's theory identifies as a dangerous condition is an unidentified piece of gravel, mortar, concrete, mixed mortar and ballast or mixed concrete and ballast of a greater size than the ballast stones comprising the walking surface in the vicinity of the fall or possibly lying upon an area where the walking surface was asphalt or partially asphalt.

The plaintiff's affidavit (Doc. 67, Exhibit B) filed in opposition to the defendants' motions for summary judgment states *inter alia*:

> 9.  As I continued walking, getting closer to
>     the asphalt located nearer to the garage door,
>     my left foot stepped on something that was

clearly not ballast and which have repeated
described as gravel, meaning a piece or chunk
of irregular form which is not normally found
on a railroad walkway of any type, and which
caused my ankle to fold to the left.

10. That as I stated at my deposition, the
piece or chunk of gravel that I stepped on was
large enough to cause my ankle to fold.

11. The size and feel of that material was
totally different from the ballast on which I
had been walking prior to this point.

12. That although I did not see the large piece
or chunk of gravel that I stepped on because I
was looking at numbers located on the cars, I
did feel it under my foot.  It felt much larger
than the size of the expected, and acceptable,
walkway surface on which I had been walking
prior to that point.  It was of irregular shape
and was large enough to cause my ankle to fold
when I stepped on it.

14. That your deponent deposes and says that
the gravel, which was large enough to cause my
ankle to roll, was totally different in both
feel and size, than the walking ballast that
appears in the walkway south of the location of
my accident.

15. That at no time have I ever stated, thought
or felt, that I had stepped on a piece of
ballast and merely fell as a result thereof.
The large piece of gravel which caused me to
trip felt nothing like ballast, and was clearly
much larger than any type of walking ballast I
have ever experienced.

We have determined the plaintiff's affidavit to be a part of the summary judgment evidence, and it gives rise to a genuine dispute of facts as to what the plaintiff stepped on and as to the walking surface's composition.

There is also minimal evidence of notice to the defendants of a dangerous condition. The plaintiff asserts that "[t]he testimony of Arnold Logistic's employee Thomas Hook [Doc. 67, Exhibit L] established that the condition which caused the plaintiff's fall and injuries, namely the chunks and pieces of mortar/cement and mortar mixed with ballast that existed in the walkway on top of and mixed in with the ballast, had existed since as far back as July of 2007 . . . ." (Doc. 67, page 8). The cited deposition testimony in combination with the Exhibit J photographs give rise to an arguable inference of the presence of a variety of shapes and sizes of chunks and pieces of mortar/cement and of mortar mixed with ballast in the walkway in July of 2009 and correspondingly to an inference of their presence there when the plaintiff fell on February 23, 2008. The presence of these irregular and varied shapes of stones may give rise to a reasonable inference of a

basis for knowledge on the part of the defendants of an unsafe condition.

This case is very similar to *Smith v. Consolidated Rail Corp.,* 1996 U.S. App. LEXIS 19126 (6th Cir. 1996), cited by defendant Norfolk Southern. The court there held the defendant railroad to be entitled to summary judgment. In both cases, the plaintiff railroad employee did not know what he had stepped on. In this case the plaintiff states in his affidavit his impressions and deductions as to what he stepped on.

The "probability of greater than zero" threshold for avoiding summary judgment is a low threshold. The plaintiff's evidence given this threshold is better measured in a Rule 50 context or evaluated by the fact finder than held insufficient by summary judgment. The summary judgment record does not support a determination that there is not a genuine dispute as to whether the defendants were negligent and as to whether the defendants' negligence caused the plaintiff's injuries.

Summary judgment should be denied also as to the third-party claim of defendant Norfolk Southern against third-party defendant Arnold Logistics and as to the cross-claim of third-party defendant against defendant Norfolk Southern.

Third-party defendant Arnold Logistics has argued in the summary judgment briefs that in the event that defendant Norfolk Southern is granted summary judgment as to the plaintiff's claims against defendant Norfolk Southern, then the third-party complaint of third-party plaintiff against third-party defendant Arnold Logistics should be dismissed. There is not a basis for the court to reach the arguments of third-party defendant Arnold Logistics as to the third-party complaint. The third-party complaint will remain a viable complaint if the motion of defendant Norfolk Southern is denied as is recommended in this Report and Recommendation.

**Recommendations**.

For the foregoing reasons, it is recommended that the defendants' motions to strike (Docs. 73, 75 and 77) be denied in part and granted in part. The affidavit of Raymond Duffany

should be stricken, and the motions should otherwise be denied.

It is recommended that the defendants' motions (Docs. 55 and

57) for summary judgment as to the plaintiff's claims against

the defendants in the amended complaint be denied.


                                        **_/s/ J. Andrew Smyser_**
                                        J. Andrew Smyser
                                        Magistrate Judge

Dated:  October 6, 2010.